**John ASH, Dorris Ash, Plaintiffs,**

v.

**DEAN WITTER REYNOLDS, INC., a California corporation; Does 1 through 100, inclusive, Defendants.**

**Civ. No. S-88-0686 DFL.**

United States District Court, E.D. California.

Sept. 30, 1992.

Robin K. Perkins, Wohl & Eggleston, Sacramento, Cal., for plaintiffs.

Kenneth C. Mennemeier, Michael Hirst, Sacramento, Cal., for defendants.

MEMORANDUM OPINION
AND ORDER

LEVI, District Judge.

Plaintiffs John and Dorris Ash ("the Ashes") sue Dean Witter Reynolds, Inc. ("Dean Witter") for the acts of William Baxter, a Dean Witter broker. According to the complaint, Baxter advised the Ashes to invest in a tax shelter without informing them that the investment had not been approved by Dean Witter. The Ashes incurred various losses when the IRS disallowed certain deductions. Dean Witter now moves for summary judgment on the ground that the Ashes' federal securities claims are barred by the statute of limitations.[1] In making this argument, Dean Witter challenges the constitutionality of § 27A of the Securities and Exchange Act of 1934 ("1934 Act"), added to the Act by a 1991 amendment.[2]

---

1. Dean Witter's contention that it is not vicariously liable for the acts of its broker in the circumstances of this case is addressed in the unpublished portion of this Memorandum Opinion and Order.

2. On June 5, 1992, the court certified that the motion placed the constitutionality of § 27A of the 1934 Act at issue and gave the United States an opportunity to intervene pursuant to 28 U.S.C. § 2403. On June 26, 1992, the United States filed a statement of interest.

## I

Dean Witter maintains that plaintiffs' third and fourth claims, which allege violations of §§ 10(b) and 20(a) of the 1934 Act, are time-barred. In *Lampf, Pleva, Lipkind, et al. v. Gilbertson,* —— U.S. ——, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991), the Supreme Court held that a § 10(b) action must be commenced within one year after the discovery of the facts constituting the violation *and* within three years after the violation occurred. *Id.,* —— U.S. at ——, 111 S.Ct. at 2782. Plaintiffs filed this action in 1988, and it is undisputed that the alleged violations occurred more than seven years earlier. The parties apparently agree that if the one-and-three-year rule set forth in *Lampf* governs this action, plaintiffs' § 10(b) claim is untimely.

On the same day that *Lampf* was decided (June 20, 1991), the Court rejected "selective prospectivity" in civil cases in *James B. Beam Distilling Company v. Georgia,* —— U.S. ——, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991). In *Beam,* Justice Souter's plurality opinion noted that the Court had occasionally employed "pure prospectivity," under which a new rule is applied neither to the parties in the law-making decision nor to those others against or by whom it might be applied to conduct or events occurring before that decision. *Id.,* —— U.S. at ——, 111 S.Ct. at 2443. By contrast, "selective" or "modified" prospectivity, in which a court applies a new rule to the case in which it is announced but returns to the old rule with respect to all other cases arising on facts predating

the pronouncement, has never been endorsed in the civil context. *Id.,* —— U.S. at ——, 111 S.Ct. at 2444–45. The *Beam* Court held that it is error to refuse to apply a rule of federal law retroactively after the case announcing the rule has already done so. *Id.,* —— U.S. at ——, 111 S.Ct. at 2446. The Court summarized its holding as follows: "[W]hen the Court has applied a rule of law to the litigants in one case it must do so with respect to all others not barred by procedural requirements or res judicata." *Id.,* —— U.S. at ——, 111 S.Ct. at 2448.

In *Lampf,* the Court announced a new rule of law (the one-and-three-year limitations period for § 10(b) actions) and then applied this rule to the parties before it.[3] Thus, under *Beam, Lampf* must be applied retroactively to all pending cases, including the Ashes' action. *See Welch v. Cadre Capital,* 946 F.2d 185, 187–88 (2nd Cir. 1991).

However, on November 27, 1991, Congress responded to *Lampf* by adding § 27A to the 1934 Act. *See* Federal Deposit Insurance Corporation Improvement Act of 1991 ("FDIC Improvement Act"), Pub.L. No. 102–242 § 476, 105 Stat. 2236, 2387 (1991).[4] Section 27A provides that any § 10(b) action that was filed on or before June 19, 1991 shall be subject to the statute of limitations in effect in the jurisdiction of filing as of June 19, 1991, the day before the decision in *Lampf.*[5]

If § 27A governs this action, plaintiffs' § 10(b) claim is timely. Under § 27A(a),

---

**3.** In *Lampf,* plaintiffs had purchased limited partnership interests with the expectation of realizing federal income tax benefits therefrom in 1979–1981, received notice from the IRS in late 1982 and early 1983 of the disallowance of tax benefits, and sued in November 1986. *Lampf,* —— U.S. at ——, 111 S.Ct. at 2776. Because plaintiffs filed suit more than three years after the alleged misrepresentations, the Court held that their claims were untimely. *Id.* —— U.S. at ——, 111 S.Ct. at 2782.

**4.** The FDIC Improvement Act was signed into law by the President on December 19, 1991.

**5.** Section 27A provides:
(a) EFFECT ON PENDING CAUSES OF ACTION. The limitation period for any private civil action implied under section 10(b) of this

Act that was commenced on or before June 19, 1991, shall be the limitation period provided by the laws applicable in the jurisdiction, including principles of retroactivity, as such laws existed on June 19, 1991.
(b) EFFECT ON DISMISSED CAUSES OF ACTION. Any private civil action implied under section 10(b) of this Act that was commenced on or before June 19, 1991—(1) which was dismissed as time barred subsequent to June 19, 1991, and (2) which would have been timely filed under the limitation period provided by the laws applicable in the jurisdiction, including principles of retroactivity, as such laws existed on June 19, 1991, shall be reinstated on motion by the plaintiff not later than 60 days after the date of enactment of this section.

the court looks to the limitation period for § 10(b) claims in this jurisdiction on June 19, 1991. On that date, the statute of limitations for § 10(b) claims in the Ninth Circuit was three years from the date on which the plaintiff discovered or could have discovered the fraud with the exercise of reasonable diligence. *See Stitt v. Williams*, 919 F.2d 516, 522 (9th Cir.1990). Here, it is undisputed that plaintiffs discovered the alleged fraud no earlier than December 1986, when they received the IRS Notices of Deficiency regarding the Schulman partnerships. This action was filed in January 1988, or well within the three year period, and the § 10(b) claim is therefore timely under § 27A.

Dean Witter challenges the constitutionality of § 27A. Dean Witter contends that § 27A violates the doctrine of separation of powers both because it improperly directs a result in pending cases and because it changes the constitutional rule announced in *Beam*. Defendant's Memorandum, 10:17–17:8. Constitutional challenges to § 27A under separation of powers, due process and equal protection theories have now been considered by many district courts and two Circuits. Both appellate courts have upheld the statute,[6] as have most district courts. *See infra* at n. 12. The court concurs with this majority view.

## II

Dean Witter first argues that § 27A violates the separation of powers doctrine by attempting to direct the outcome of certain cases without changing the underlying law. Dean Witter relies on *United States v. Klein*, 80 U.S. (13 Wall.) 128, 20 L.Ed. 519 (1871), in which the Court held that Congress may not "prescribe a rule for a decision of a cause in a particular way" where "no new circumstances have been created by legislation." *Id.* at 147.

In *Klein*, the statute at issue made evidence of a presidential pardon inadmissible as proof of loyalty for Confederate landholders seeking to reclaim their property in the Court of Claims. The enactment ordered the Supreme Court to dismiss for lack of jurisdiction any appeal from a Court of Claims judgment based on the claimant's reliance on a pardon and required the Court of Claims to treat a claimant's receipt of a pardon as evidence of disloyalty. *Klein*, 80 U.S. at 143–44. The Court concluded that the enactment violated the principle of separation of powers because by prescribing the rule of decision in pending cases "Congress has inadvertently passed the limit which separates the legislative from the judicial power." *Id.* at 147. As developed in subsequent cases, the rule in *Klein* invalidates legislation that, while leaving the substance of a particular provision of law unchanged, dictates the manner of application of that law to pending cases, thereby directing the results.

Dean Witter maintains that § 27A is directly analogous to the statute in *Klein*. Several courts have so held. *See In re Brichard Securities Litigation*, 788 F.Supp. 1098 (N.D.Cal.1992); *Bank of Denver v. Southeastern Capital Group, Inc.*, 789 F.Supp. 1092 (D.Colo.1992).[7] It is fair to say that the matter is not free from doubt. But because § 27A does not prescribe the outcome of pending cases and because it does change the underlying law

**6.** *See Anixter v. Home–Stake Production Company*, 977 F.2d 1533 (10th Cir.1992); *Henderson v. Scientific–Atlanta, Inc.*, 971 F.2d 1567 (11th Cir. 1992).

**7.** *See also In re Rospatch Securities Litigation*, 802 F.Supp. 110, 113–15 (W.D.Mich.1992) (follows *Brichard*, asserts that § 27A "does not adopt or change the law regarding the statute of limitations," but "attempts to turn back the clock to June 19, 1991"); *Mancino v. International Technology Corporation*, 1992 WL 114436 (C.D.Cal. March 10, 1992) (follows *Brichard* without analysis); *Sims v. Shearson Lehman Brothers, Inc.*, Civ. No. CA3–90–2052–P

(N.D.Tex. Jan. 29, 1992), Order at 6 ("[A]s in *Klein*, Congress has forbidden the courts to apply the rule of decision they were compelled to apply—*Lampf*—in order to achieve an outcome Congress desires in specific pending cases"); and *Rosenthal v. Dean Witter Reynolds, Inc.*, No. 91–F–591 (D.Colo. June 15, 1992), Order at 6–9 (noting that § 27A affected "only a discrete group of cases," and declaring that while the statute "does not direct any particular findings of fact or a decision on the merits of the § 10(b) claim, it does direct an application of law to fact").

the court concludes that the measure is constitutional.

First, § 27A does not dictate the outcome of particular cases; instead, by removing *Lampf*'s time bar to cases otherwise timely filed, it only withdraws a procedural defense resting on the statute of limitations. The mere fact that § 27A *may* change the eventual outcome of pending cases is irrelevant under *United States v. Sioux Nation of Indians*, 448 U.S. 371, 100 S.Ct. 2716, 65 L.Ed.2d 844 (1980). *See Treiber v. Katz*, 796 F.Supp. 1054, 1058–59 (E.D.Mich.1992).

In *Sioux Nation* the Supreme Court upheld the constitutionality of a statute which withdrew a res judicata defense,[8] and explicitly distinguished *Klein*. The *Sioux Nation* Court noted that unlike the invalid statute in *Klein*, the provision before it only "waived the defense of res judicata so that a legal claim could be resolved on the merits." "Congress made no effort ... to control the Court of Claims' ultimate decision of that claim," and "in no way attempted to prescribe the outcome of the Court of Claims' new review of the merits." *Id.*, 488 U.S. at 405, 407, 100 S.Ct. at 2735–36, 2737.

Section 27A, like the *Sioux Nation* provision, limits a procedural defense, but does not attempt to direct the outcome on the merits of § 10(b) litigation. Indeed, § 27A

is even more clearly constitutional than the statute upheld in *Sioux Nation* because, as the United States suggests, unlike the *Sioux Nation* provision, § 27A restricts but does not completely waive a defense, and § 27A affects a large group of § 10(b) actions whereas the *Sioux Nation* statute was explicitly addressed to one specific case.

Dean Witter suggests that Congress did intend to affect the outcome of certain high profile, identifiable cases, and was so motivated in enacting § 27A. But this reliance on Congress' supposed purpose to attack § 27A is unpersuasive. On its face § 27A does not prescribe the outcome of any case by name nor does it have this effect. Furthermore, defendant cites no authority for the proposition that legislative motivation has any relevance to the separation of powers issue. It matters not whether Congress intended to intrude on the courts' exclusive sphere.[9] The issue must be resolved on an objective basis, and here there is no impermissible intrusion, whatever Congress' intent may have been.

For these reasons, both circuits that have considered the issue have concluded that § 27A does not direct the outcome of pending cases.[10] Numerous district courts agree.[11]

Second, even if it could be viewed as prescribing the outcome of pending cases,

---

**8.** *See* Pub.L. 95–243, 92 Stat. 153, 25 U.S.C. § 70s(b) (providing for Court of Claims review of the merits of the Indian Claims Commission's judgment that a prior congressional enactment effected a taking of the Black Hills, without regard to the defenses of res judicata and collateral estoppel).

**9.** *See Klein*, 80 U.S. at 146 (Congress "inadvertently" passed the limit between the legislative and judicial power).

**10.** *See Henderson v. Scientific–Atlanta, Inc.*, 971 F.2d 1567, 1571–73 (11th Cir.1992) (rejecting defendant's contention that Congress attempted to force courts to reach an outcome, because "Congress has not interfered with the judicial process. The Act does not require courts to make any particular findings of fact or applications of law to fact."). *See also Anixter v. Home–Stake Production Company*, 977 F.2d 1533, 1544–46 (10th Cir.1992) ("This case is not *Klein*. Section 27A does not direct courts to make specific factual findings or mandate a result in a particular case. Instead, in Section 27A, Congress prescribed a new statute of limi-

tations for the judiciary to apply to all Section 10(b) litigation pending on June 19, 1991.")

**11.** *See Ayers v. Sutliffe*, No. C–1–90–650, 1992 WL 207235 (S.D.Ohio Feb. 11, 1992) ("Congress has simply eliminated a defense available to defendants in an unidentified number of cases based on the date on which the cases were filed"); *Bankard v. First Carolina Communications, Inc.*, 1992 WL 3694 at *6 (N.D.Ill. Jan. 6, 1992) (§ 27A "does not direct the courts to make a particular factual finding or to reach a particular decision on the merits of any securities fraud claim"); *TBG Inc. v. Bendis*, 1992 WL 80622 at *5 (D.Kan. March 5, 1992) (§ 27A does not prescribe a rule for a decision of a cause in a certain way); *Axel Johnson, Inc. v. Arthur Andersen & Co.*, 790 F.Supp. 476, 479 (S.D.N.Y. 1992) (§ 27A "exhibits the central characteristic of legislation, as opposed to adjudication ... [n]otably absent from § 27A, unlike the statute held unconstitutional in *Klein,* is a specific directive as to what evidence a court may consider in determining the timeliness of the suit's filing or the case's merits"); *Brown v. The Hut-*

§ 27A does not violate *Klein* because it changes the underlying law, rather than dictating the application of existing law. This seems plain when one considers that in the absence of *Lampf,* Congress certainly could have enacted a new statute of limitations for § 10(b) claims effective only as to claims filed after June 19, 1991. Such a measure works a change in the underlying law even though, as is frequently the case, it does not apply retroactively or applies retroactively only as of a certain date.[12]

Nor is it significant to this part of the *Klein* analysis that certain identifiable pending matters may be affected by a change of law. The Supreme Court rejected this argument in *Robertson v. Seattle Audubon Society,* —— U.S. ——, 112 S.Ct. 1407, 118 L.Ed.2d 73 (1992), in which the legislation at issue made explicit reference to two pending cases.[13]

### III

Dean Witter also contends that § 27A is unconstitutional because it changes

*Beam*'s constitutional rule regarding retroactivity. This argument fails, however, because *Beam* was not constitutionally based.

In *Beam,* Justice Souter, writing for the Court and joined only by Justice Stevens, relied on non-constitutional grounds in rejecting selective prospectivity; he emphasized the principle that "litigants in similar situations should be treated the same, a fundamental component of *stare decisis* and the rule of law generally." —— U.S. at ——, 111 S.Ct. at 2444. Justice Souter labeled the problem one of "judicial mechanics." *Id.,* —— U.S. at ——, 111 S.Ct. at 2443.

Several years before deciding *Beam,* the Supreme Court had rejected selective prospectivity in the *criminal* context in *Griffith v. Kentucky,* 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). The Court's decision there rested on both constitutional and prudential considerations.[14] In *Beam,* Justice Souter held that *Griffith* "cannot be confined to the criminal law," and ex-

---

*ton Group,* 795 F.Supp. 1307 (S.D.N.Y.1992) (§ 27A does not direct particular findings, but merely turns back the legal clock for the period just prior to *Lampf*); *Adler v. Berg Harmon Associates,* 790 F.Supp. 1235, 1242–43 (S.D.N.Y. 1992) (same); *Lundy v. Morgan Stanley & Co.,* 794 F.Supp. 346, 349–50 (N.D.Cal.1992) (§ 27A leaves the application of the rules of law entirely to the judiciary); *Rabin v. Fivzar Associates,* 801 F.Supp. 1045, 1054 (S.D.N.Y.1992) (§ 27A merely specifies the law to be applied and leaves to the courts the job of applying that law to the facts before them); *Kalmanson v. McLaughlin,* 1992 WL 190139 at \*2 (S.D.N.Y.1992); *First v. Prudential Bache Securities, Inc.,* No. CV 91–0047, 1991 WL 346367 (S.D.Cal. March 25, 1992), Order at 4 ("Congress is not focusing on facts relating to the merits of cases to determine which claims are timely and which are not"); *In re Taxable Municipal Bond Securities Litigation,* 796 F.Supp. 954, 961 (E.D.La.1992), (§ 27A "does not dictate the decision of this action on the merits"); *Cannistraci v. Dean Witter Reynolds, Inc.,* 796 F.Supp. 619, 621–22 (D.Mass. 1992) (Congress has not sought to control the ultimate resolution of a pending case).

**12.** Both the Tenth and Eleventh Circuits have recognized that § 27A changes the law. *See Anixter,* 977 F.2d at 1545–46 ("Section 27A changes the law and was intended to change the law"); *Henderson,* 971 F.2d at 1573 ("Like the

Compromise at issue in *Audubon,* section 27A does implement a change in the law; it amends the Securities Exchange Act to provide the statute of limitations for private causes of action under section 10(b) that were filed by June 19, 1991"). Many district courts have reached the same conclusion. *See, e.g., TGX Corp. v. Simmons,* 786 F.Supp. 587, 592 (E.D.La.1992); *Treiber v. Katz,* 796 F.Supp. 1054, 1058–59; *Adler v. Berg Harmon Associates,* 790 F.Supp. at 1243; *Axel Johnson, Inc. v. Arthur Andersen & Co.,* 790 F.Supp. at 479; *Wegbreit v. Marley Orchards Corp.,* 793 F.Supp. 965, 970 (E.D.Wash.1992); *Lundy v. Morgan Stanley & Co.,* 794 F.Supp. 346, 348–49 (N.D.Cal.1992); *Rabin v. Fivzar Associates,* 801 F.Supp. 1045, 1053; *Fry v. UAL Corporation,* 1992 WL 177086 at \*14 (N.D.Ill. July 23, 1992); *Bankard,* 1992 WL 3694 at \*5–6; *Duke v. Touche Ross & Co.,* 1992 WL 197412 at \*3 (S.D.N.Y. Aug. 4, 1992).

**13.** The Court held that the provision challenged in *Robertson* amended applicable law and therefore posed no problem under *Klein. Robertson,* —— U.S. at ——, 112 S.Ct. at 1414.

**14.** For a discussion of *Griffith* and retroactivity *see* Richard H. Fallon, Jr. and Daniel J. Meltzer, *New Law, Non–Retroactivity, And Constitutional Remedies,* 104 Harv.L.Rev. 1731, 1797–1807 (1991). The authors conclude that non-retroactivity is not incompatible with Article III.

tended its holding to civil cases. *Beam*, — U.S. at ——, 111 S.Ct. at 2446. Several courts have concluded that Justice Souter's reliance on *Griffith* indicates that his rejection of selective prospectivity was constitutionally based. *See, e.g., Brichard,* 788 F.Supp. at 1110. But Justice Souter's opinion mentions neither Article III specifically nor the constitution generally. Moreover, to the extent that Justice Souter relies on *Griffith,* he cites only the *nonconstitutional* portion of that decision. *Beam*, — U.S. at ——, 111 S.Ct. at 2446. Finally, in *Beam,* Justices Blackmun, Marshall and Scalia concurred in two separate written opinions specifically for the purpose of asserting that selective prospectivity is barred by the Constitution. These two concurrences emphasize, and take issue with, Justice Souter's failure to rest his opinion on constitutional grounds.[15]

Even if *Beam* were constitutionally based, however, § 27A would not be constitutionally infirm. *Beam* holds that a *court* may not refuse to apply a rule of federal law retroactively after the case announcing the rule has already done so. *Beam*, — U.S. at ——, 111 S.Ct. at 2446. *Beam* does not proscribe *Congress'* ability to "refuse to apply a rule of law retroactively." Congress does not "apply" laws to litigants or pending cases; it does not adjudicate "cases or controversies" under Article III. Surely *Beam* does not announce a new rule of equal protection applicable to legislative acts. And if *Beam* did somehow limit legislative authority, Congress probably did not effect "selective prospectivity" by enacting § 27A, since § 27A itself apparently applies to the *Lampf* litigants.[16]

The court concludes that § 27A is constitutional. A finding of constitutionality avoids the considerable irony that would result were the court to hold that while the courts may decree a statute of limitations for pending and future cases brought under a statute, the Congress may not exercise precisely the same authority once the courts have spoken.

Because § 27A survives defendant's constitutional challenge, plaintiffs' § 10(b) claim is not time-barred. Dean Witter's motion for summary judgment on statute of limitations grounds therefore is denied.

IT IS SO ORDERED.

---

**15.** As the Tenth Circuit noted, *Beam* was "carefully crafted to garner a plurality to agree only that retroactive application of a rule of law announced in a case was a matter of a choice of law and not of constitutional import." *Anixter,* 977 F.2d 1533, 1547. Most district courts to consider the question have echoed this reading of *Beam.* *See Adler,* 790 F.Supp. at 1243–44; *Rabin,* 801 F.Supp. 1045, 1054; *Kalmanson,* 1992 WL 190139 at *3; *Fry,* 1992 WL 177086 at *14; *Brown,* at 1314–15. In addition, the Seventh Circuit (in a case which did *not* present a constitutional challenge to § 27A) has also now squarely rejected defendant's interpretation of *Beam:* "If *Jim Beam* purported to be a constitu-

tional decision, there would be a nice question whether we could obey the congressional *mandate.* But only three (or maybe four) Justices in *Jim Beam* opined that the practice of applying a new rule to some litigants and not others is unconstitutional." *McCool v. Strata Oil Company,* 972 F.2d 1452, 1458 n. 3 (7th Cir.1992).

**16.** At oral argument, counsel for plaintiffs and defendant conceded that they did not know whether § 27A applied to the *Lampf* litigants, while the government suggested that it did apply.